IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CASE NO. 1:16-CR-366-TWT-CMS |
| vs. | * | |
| DERICK JOSEPH, | * | |
| Defendant. | * | |

SENTENCING MEMORANDUM ON
BEHALF OF DERICK JOSEPH

COMES NOW Derick Joseph, defendant in the above styled case, by and through counsel, and pursuant to Federal Rules of Criminal Procedure, Rule 32(i)(3), 18 U.S.C. § 3553(a) and § 3661 and provides this Court with relevant information to consider in determining a reasonable sentence to impose in this case.

On August 30, 2017, Mr. Joseph entered a non-negotiated guilty plea the three counts of the indictment for using an instrument of commerce to communicate a bomb threat in violation of 18 U.S.C. § 844(e). (Doc. # 32). As set forth in the presentence report, Mr. Joseph was taken into federal custody on November 10, 2016. He has remained in federal custody since that date. He understands what he did wrong, why it was wrong, and he is truly sorry for his actions.

1

This memorandum will address the unresolved guideline issues first and then address the sentencing factors under 18 U.S.C. § 3553(a).

### The Counts Should be Grouped Together

Mr. Joseph, through counsel, objected to the counts not being grouped together in paragraph 35 of the PSR. In essence, Mr. Joseph argues that his crimes are part of the same scheme against a single victim, namely Walmart Inc. The Government responded to the objection that because Mr. Joseph called multiple Walmart stores and spoke with multiple employees of those stores forcing the evacuation of all of the guests of the store at that time. The Government cites two cases in support of that position, United States v. Simmons, 649 F.3d 301(5th Cir. 2011) and United States v. Parker, 551 F.3d 1167 (10th Cir. 2008). Mr. Joseph does not, and cannot, contest that he called multiple Walmart stores and spoke with multiple employees of Walmart. However, under the facts of this case, the counts should be grouped together.

U.S.S.G § 3D1.2 requires courts to make a case by case determination based upon the facts of the case and the applicable guideline. Specifically, § 3D1.2 sets forth when different counts that constitute different crimes should be grouped together as follows:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve

substantially the same harm within the meaning of this rule:

(a) When counts involve the same victim and the same act or transaction.

(b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

(c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

(d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

In this case § 3D1.2(b) supports grouping the counts together.[1] The Eleventh Circuit has stated:

> The decision on whether to group several counts involving the same victim is not always clear cut, and although existing case law may provide some guidance, courts should look to the underlying policy as stated in the Guidelines' Introductory Commentary. The Introductory Commentary recognizes that different rules are required for dealing with multiple-count convictions involving offenses with repetitive and ongoing behavior

---

[1] Mr. Joseph must acknowledge that under § 3D1.2(d) chapter two, part A offenses are excluded from grouping under § 3D1.2(d), but that does not mean that they cannot be grouped under a different subsection. United States v. Bonner, 85 F.3d 522, 524 (11th Cir. 1996).

3

> and those that are oriented more toward single episodes of behavior.

United States v. Bonner, 85 F.3d 522, 525 (11th Cir. 1996). In United States v. Williams, 340 F.3d 1231, 1244-1246 (11th Cir. 2003), the Eleventh Circuit reviewed the commentary to § 3D1.2 and found:

> The Commentary to the Sentencing Guidelines states, "Generally, there will be one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim." U.S.S.G. § 3D1.2, cmt. n. 2. While such commentary is binding on us, *see Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913 1915, 123 L.Ed.2d 598 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."), this particular statement is a broad generalization rather than an inflexible rule that must be applied in every single case. Where offenses such as the robbery and conspiracy at issue here equally harm multiple people, the guidelines do not force us to designate the "one real victim**." The main purpose of this provision is simply to emphasize that "secondary victims," such as bystanders who may be traumatized at the sight of a crime, should not be counted as victims when grouping offenses under § 3D1.2.** *See* U.S.S.G. § 3D1.2, cmt. n. 2 ("The term `victim' is not intended to include indirect or secondary victims.").

(Emphasis added).

The facts as set forth in the PSR demonstrate that any employee of Walmart was at best a secondary or indirect victim. The three calls that were made to the

three Walmart stores occurred within approximately a 15 minutes time frame on the same day. (PSR ¶ 8, 9, 10). The calls were placed in the early afternoon, just before 1:00 pm, but Mr. Joseph's statements about the bombs indicated to whoever received the calls that the bombs would not go off until "that night" or the "end of the day." (PSR ¶ 8, 9). One employee thought so little of the threat that they simply hung up on Mr. Joseph. (PSR ¶ 9). From the statements made by Mr. Joseph in communicating these threats, it is not even clear that Walmart was an intended victim, although given the targeting of these calls it seems that Walmart was most directly and most seriously affected by the threats. The calls do not specifically threaten any one person, just that the stores would be blown up several hours later. (PSR ¶ 8, 9, 10).

The counts of the indictment should be grouped together because the crimes all occurred on the same date, within minutes of each other, and with the common objective, or scheme, to disrupt the operation of the local Walmart stores. U.S.S.G. § 3d1.2(b); United States v. Williams, 340 F.3d 1231 (11th Cir. 2003)(while there were two victims, the counts should have been grouped because they were the same two victims in each count); United States v. Bonner, 85 F.3d 522 (11th Cir. 1996)(district court properly refused to group even though there was only one victim there were separate and distinct threats over time); United States v. Miller, 993 F.2d 16 (2nd Cir. 1993)(threatening letters over a four month period did

not group); United States v. Simmons, 649 F.3d 301 (5th Cir. 2011)(employees who received multiple bomb threats that they had minutes to leave before a bomb would go off were separate victims and the counts did not group); United States v. Parker, 551 F.3d 1167 (10th Cir. 2008)(threats made against different victims as the defendant threaten to blow up a school, schools, and City Hall); United States v. Norman, 951 F.2d 1182 (10th Cir. 1991)(defendant called an airline, over two days, to falsely implicate a single victim – these counts should have been grouped as it involved a single victim and a common scheme); United States v. Wilson, 920 F.2d 1290 (6th Cir. 1990)(five phone calls and a letter seeking someone to kill his wife should have been grouped together because there was a single victim, the wife, and the objective was the same for all six acts, to kill the wife) .

The facts of Simmons, relied upon by the Government, is not controlling as each employee that received a bomb threat was place in immediate fear of personally being harmed. In other words, each employee was directly and seriously affected by the threats. The facts in Mr. Joseph case demonstrate that there was only one intended victim, and that was Walmart. Each of the calls were designed with the objective to disrupt the operations of those stores. Accordingly, the three counts should be grouped together.

# This Court should impose a sentence which is no greater than necessary to achieve the purposes of 18 U.S.C. §§ 3553.

This Court is well aware of the § 3553(a) factors which include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed education or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

**1) The nature and circumstances of the offense and the history and characteristics of the defendant.**

Mr. Joseph acknowledges that the crimes that he committed are serious offenses that caused disruption to the Walmart stores inconvenienced many people, and caused a reaction from law enforcement. This appears to be an episode that was a result of Mr. Joseph's mental health problems and not part of some greater pattern of malicious or calculated criminal behavior. Mr. Joseph's actions were

concentrated into a single day within a short period of time. He had no ability to make a bomb, and there is no evidence that he even attempted to carry out these vague and delusional threats. From the face of the threats, including Mr. Joseph's claims of being part of the Illuminati, his actions illustrate a troubled mind.

Mr. Joseph's background is filled with trauma and injury. As set forth in the PSR, he had a friend who was stabbed in front of him in junior high school. (PSR ¶ 64). He has also survived a machete attack, three gunshot wounds from two different occasions, and a serious car accident. (PSR ¶ 68). He has also suffered suicidal episodes, physical abuse as an adult, and voluntary substance abuse. He also was incarcerated on murder charges that he was not guilty of for more than two years. (PSR ¶ 59).

These events came during a period of calm and progress for Mr. Joseph. His longtime girlfriend, Brittney Griffin, has continued to stand by him and support him. With her support, Mr. Joseph was doing well, but for whatever reason he made the decision to make these phone calls. Mr. Joseph cannot recall what made him call the Walmart stores, but such a dissociative state is not uncommon for those suffering from post-traumatic stress disorder.[2]

---

[2] The National Center for Post-Traumatic Stress Disorder, part of the Department of Veterans Affairs, published a summary of the scientific literature linking disassociative behavior to those suffering from PTSD. That summary can be found at https://www.ptsd.va.gov/professional/newsletters/research-quarterly/v17n1.pdf

8

Mr. Joseph knows that he made a mistake and he has accepted responsibility for his actions by entering a guilty plea. He also knows that he needs to continue the treatment that he has been receiving while incarcerated, and with Ms. Griffin's help he plans to get the mental health he needs.

Mr. Joseph is at one moment talkative and engaging, and then at the next moment guarded. He knows that he faces punishment for his actions, but asks that it be no longer than necessary and that it allow him to get the treatment he needs to thrive going forward.

**2) The need to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to provide deterrence, and protect the public from the defendant.**

This memorandum will address each of these factors in this section as, in this case, these issues are interrelated. The sentence in this case comes down to how should this Court punish a serious, but isolated, mental health episode in which the harm was a disruption in business and inconvenience of shoppers. All indications were that Mr. Joseph was finally living a law-abiding life, working two jobs, and enjoying a healthy relationship with his girlfriend: then Mr. Joseph made those calls to the Walmart Stores. As of the date of sentencing, Mr. Joseph will have lost a little over a year of his freedom.

There is a moral refrain that dates back at least biblical times that a society should be judged by how it treats the least of its citizens.[3] That sentiment is not a license for the poor, or sick, to summarily break the laws and to skirt just punishment. Rather, it is a recognition that those in power should not unduly punish those based upon their weakness. To be sure, Mr. Joseph has mental health issues that led to these charges. If the Court is inclined to impose a significant additional period of incarceration, respectfully, it is more likely that such a sentence will neither promote respect for the law nor deter Mr. Joseph from future criminal activity.

A recent report by the Office of the Inspector General for the Department of Justice, details the lack of serious mental health treatment in the Bureau of Prisons. (https://oig.justice.gov/reports/2017/e1705). The BOP is frankly in the warehousing business, and not the mental health treatment business. A lengthy period of incarceration would be counterproductive to the steps Mr. Joseph has taken in his pretrial detention facility.

---

[3] "And the King shall answer and say unto them, Verily I say unto you, Inasmuch as ye have done *it* unto one of the least of these my brethren, ye have done *it* unto me." Matthew 25:40, King James Version; "The moral test of government is how that government treats those who are in the dawn of life, the children; those who are in the twilight of life, the elderly; those who are in the shadows of life; the sick, the needy and the handicapped." – Hubert H. Humphrey; "A nation's greatness is measured by how it treats its weakest members." Mahatma Ghandi.

The time Mr. Joseph has already served is a significant time incarcerated and that is a sufficient deterrent to any reasonable person that would consider committing such a crime. While he is no Jean Valjean, a year, or slightly more, is not an insignificant period of incarceration. What is clear is that Mr. Joseph does not want to reoffend and is more than willing to do his part to stay well and become a productive member of society.

**3) The need to avoid unwarranted sentencing disparities, pertinent policy statements of the guidelines, and the need to provide restitution to victims.**

Mr. Joseph does not ask for special treatment, rather he asks for consideration of his mental health issues that led him before this Court and that he be treated fairly. The PSR notes that mental and emotional conditions of the defendant may be a basis for, but does not recommend, a departure under U.S.S.G. § 5H1.3. (PSR p. 19). Mr. Joseph will not belabor the points previously made above. He simply asks that the Court's sentence be fair.

As of the date of the final PSR, Walmart has not indicated whether it will seek restitution in this matter. If Walmart persists in this position, and Mr. Joseph is not suggesting that it is an unwise position, then Mr. Joseph asks that this Court not impose the financial burden of restitution. To some a simple stroke of a pen could wipe away the restitution that could be sought. Mr. Joseph works hard, but he has not managed to find a job that pays him much more than minimum wage.

If Walmart wishes to require Mr. Joseph make monthly payments out of his income, they are within their rights to collect the small percentage of his minimum wage jobs for the next several decades. Either way, Mr. Joseph asks the Court not to impose conditions that will hamper his ability to get the mental health treatment he needs.

Respectfully submitted this 17th day of November, 2017.

/S/ *Adam M. Hames*_____
Adam M. Hames
Georgia Bar No. 320498
The Hames Law Firm L.L.C.
511 East Paces Ferry Road N.E.
Atlanta, Georgia 30305
(404)842-9577(office)
(404)842-9599 (fax)
Adam@amh-law.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CASE NO. 1:16-CR-366-TWT-CMS |
| | * | |
| vs. | * | |
| | * | |
| DERICK JOSEPH, | * | |
| | * | |
| Defendant. | * | |

## Certificate of Service

This is to certify that I have this day served correct copy of the foregoing Sentencing Memorandum with the Clerk of Court using the CM-ECF system which will automatically send e-mail notification of such filing to opposing counsel.

Bret R. Hobson  A.U.S.A.

This 17th day of November, 2017.

/S/ *Adam M. Hames*_____
Adam M. Hames
Georgia Bar No. 320498
The Hames Law Firm L.L.C.
511 East Paces Ferry Road N.E.
Atlanta, Georgia 30305
(404)842-9577(office)
(404)842-9599 (fax)